# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 23-940V

| | |
|---|---|
| VICKI MULLIN,<br><br>              Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>              Respondent. | Chief Special Master Corcoran<br><br>Filed: July 17, 2024 |

*Jimmy A. Zgheib, Zgheib Sayad, P.C., White Plains, NY,* for Petitioner.

*Joseph Adam Lewis, U.S. Department of Justice, Washington, DC,* for respondent.

**FINDINGS OF FACT**[1]

On June 23, 2023, Vicki Mullin filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received in her right shoulder on November 11, 2020.[3] Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] The petition states that Petitioner also received a Pneumovax 23 vaccine in the same arm as the covered flu vaccine. *See* Ex. 2 at 8-9.

For the reasons discussed below, I find the flu vaccine alleged as causal was more likely than not administered in Petitioner's right shoulder.

## I.     Relevant Procedural History

Shortly after initiating her claim, Petitioner filed her affidavit, vaccination record (failing to set forth an administration situs),[4] medical records, and a statement of completion. ECF Nos. 6, 8. This case was then activated and assigned to SPU in October 2023. ECF No. 9.

In February 2024, Respondent represented that he had some questions regarding Petitioner's vaccine administration record, namely that such records "do not indicate the site of vaccination . . . ." Scheduling Order, ECF No. 13. Respondent noted that Petitioner had tried to obtain a "better vaccine administration record" (Ex. 10), but the facility claimed "they couldn't produce anything else." *Id.* at 1. Subsequently, in response to a subpoena served upon Petitioner's pharmacy in which the subject flu vaccination was administered, the pharmacy stated that a search was completed for evidence of Petitioner's November 11, 2020 record but "no records were found." *See* Ex. 15 at 1; *see also* ECF Nos. 14-18. Thus, prior to Respondent providing his position in this case, I find it helpful to issue the instant finding regarding situs.

## II.    Issue

At issue is whether Petitioner received the vaccination alleged as causal in her right arm. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination).

## III.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally

---

[4] Petitioner's vaccination record in fact does not explicitly state that the subject flu vaccine was *administered* on November 11, 2020. Instead, it memorializes that an order for Petitioner's flu vaccine was "filled" on "11/6/20, 11:14 AM" – but with a "pickup date" of "11/11/20, 4:57 PM." It thus appears that the record would support a finding that Petitioner received the subject flu vaccine on November 11, 2020, as alleged.

contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

IV. **Finding of Fact**

The following finding of fact is based on a complete review of the record, including the petition, all medical records, affidavits, and additional evidence filed.

- Ex. 3 ¶ 3, Petitioner's affidavit, wherein she attests that she "received a flu shot in [her] dominant right shoulder on November 11, 2020." She states that she started having pain in her right shoulder "immediately after receiving the flu vaccine" and that the nurse administered the vaccine "very high up in [her] shoulder." *Id.* ¶ 5.

- Ex. 11 at 2, a reproduction of a text message Petitioner sent on November 12, 2020 (the day after the subject vaccination), at 7:18 AM. The text reads "[she] got 2 shots yesterday in [her] arm and am having a reaction and have been in so much pain all night and can not [sic] even lift [her] right arm!!" Another text message states "[she] had flu and pneumonia shot [sic] yesterday and pharmacist did both in [her] right arm!" *Id.* at 3. Such messages, while they indeed provide context to Petitioner's argument regarding situs, are appropriately deserving of less weight as they are not akin to a contemporaneous medical record.

- Ex. 4 at 222, a record from a phone call to Petitioner's primary care physician ("PCP") on November 12, 2020, stating "[Petitioner] had both flu and pneumonia shots in her dominant arm yesterday and now she cannot use that arm at all . . . she states the pharmacist didn't ask which was her dominant arm and said that she could get both shots with no problem." Other than referring to her "dominant arm," this record does not contain complaints specific to the right shoulder.

- Ex. 5 at 11-12, memorializing that during her visits on November 16, 2020 (a telehealth follow-up with her rheumatologist for pre-existing lupus and related bilateral hand pain) and February 4, 2021 (a PCP follow-up for migraines, neck pain, and chest tightness) (Ex. 4 at 28-32), Petitioner did not mention right shoulder complaints. While this fact does not impede Petitioner's ability to establish situs, I include it to highlight some of the inconsistencies between the petition – wherein Petitioner alleges she made right shoulder complaints during these visits – and the contemporaneous medical records.

4

- Ex. 5 at 8-10, a record from Petitioner's March 15, 2021 rheumatology follow-up stating that she "is complaining of pain in the right arm" and since her last visit her "arthritis/condition is: Worse." *Id.* at 8. The assessment noted "arthralgia, unspecified joint." *Id.* at 9. The record does not include a connection between Petitioner's right arm pain and the subject flu vaccination. *See id.*

- Ex. 4 at 19-20, a record from Petitioner's June 11, 2021 visit with her PCP wherein her chief complaint was "shoulder problem right." She complained of "right shoulder pain with decreased [range of motion ("ROM")]" and that she "received a pneumonia and flu vaccine in the right arm in November and has been having worsening pain since then." *Id.* at 23. A physical examination revealed "tenderness and limited ROM; right shoulder tender to palpation at the [acromioclavicular ("AC")] notch. Pain and decreased ROM with adduction flexion and external rotation." *Id.* Petitioner was assessed with "pain in unspecified shoulder," and physical therapy ("PT"), an x-ray of the right shoulder, and meloxicam were recommended. *Id.* at 24.

- Ex. 4 at 15-18, a follow-up with Petitioner's PCP for "right shoulder pain" on September 24, 2021. The PCP noted that this pain "began after [Petitioner] received a COVID-19 vaccine."[5] *Id.* at 18. Petitioner's physical examination was unchanged. *Id.* at 19. The PCP noted Petitioner had completed some PT with her sister (a physical therapist), her meloxicam prescription was increased, and an MRI of the right shoulder was ordered. *Id.*

- Ex. 6 at 16, a record from Petitioner's October 6, 2021 MRI of the right shoulder, showing moderate supraspinatus tendinosis with a partial thickness tear involving the "mid to anterior fibers at the footprint involving greater than 50% of the tendon thickness[;]" mild infraspinatus tendinosis without a discrete tear; subacromial/subdeltoid bursitis; and type 2 acromion with mild anterior and lateral downsloping, "predispos[ing Petitioner] to clinical impingement syndrome."

- Ex. 7 at 48, a record from Petitioner's October 18, 2021 initial PT evaluation for pain in the right shoulder. Petitioner underwent seven PT sessions for her right shoulder symptoms through November 12, 2021. *Id.* at 33-48.

---

[5] It is not clear whether this entry regarding the COVID-19 vaccine was made in error. Petitioner should aim to address or otherwise remedy this discrepancy.

- Ex. 8 at 8, a record from an orthopedic evaluation on November 15, 2021, wherein Petitioner presented with "dominant sided, right shoulder pain that began one year ago with after [sic] her COVID vaccine injections." The impression included a "right shoulder high grade partial thickness tear supraspinatus, SLAP lesion, [and] impingement." *Id.* at 9. Arthroscopic surgery was recommended for Petitioner's right shoulder symptoms, which she underwent in December 2021. *See id.* at 9, 12, 24-25. She thereafter received subsequent treatment, including post-operative PT and a steroid injection in the right shoulder in February 2022. Ex. 7 at 108-42; Ex. 8 at 45. When such efforts were unsuccessful at treating her pain, Petitioner underwent a second surgery of the right shoulder in August 2022, followed by additional PT. Ex. 8 at 60-61; Ex. 7 at 144.

The above evidence preponderantly supports the conclusion that Petitioner's subject November 2020 vaccination was likely received in her right shoulder, as alleged. The record of Petitioner's November 12, 2020 call to her PCP, noting she received the subject vaccination in her dominant arm (Ex. 4 at 222), is particularly persuasive. This record is from only one day post-vaccination, and while it does not contain visit notes or physical findings, it is the most contemporaneous record other than the vaccine administration record itself that is silent as to site. Although this record does not clarify which arm is Petitioner's dominant, the record from Petitioner's November 15, 2021 orthopedic visit (noting "dominant sided, right shoulder pain that began one year ago") provides context to this earlier record. When taken together, such evidence is sufficient support for the alleged right arm situs.

I acknowledge that the vaccine administration record *itself* does not memorialize the site of the administration of Petitioner's flu vaccine. Ex. 2 at 8. However, all other medical records and Petitioner's affidavit support a finding that the covered flu vaccine was administered in Petitioner's right arm. Moreover, in addition to Petitioner's self-reports to treaters and her own statements in her affidavit, her medical records consistently document diagnostic testing, physical therapy exercises, and treatment of Petitioner's right shoulder. To rule otherwise, the overall record would need to contain more instances in which the counter situs was suggested or supported.

I also note that some of Petitioner's medical records attribute her right shoulder pain to her receipt of a non-covered COVID-19 vaccine. Ex. 4 at 18; Ex. 8 at 8. However, when weighed against Petitioner's other medical records, wherein she described pain following flu and pneumonia vaccinations in the right arm (Ex. 4 at 23, 222), I find the evidence regarding situs to favor Petitioner (albeit *barely*). Overall, such circumstances produce, at worse, a "tie" in evidence that should be decided in Petitioner's favor. *Roberts*

6

*v. Sec'y of Health & Hum. Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Spec. Mstr. Aug. 29, 2013) (noting petitioners are afforded the benefit of close calls in the Vaccine Program).

### V. Scheduling Order

**Respondent shall file, by no later than <u>Friday, August 16, 2024</u>, a status report stating how he intends to proceed in this case.** At a minimum, the status report shall indicate whether he is willing to engage in tentative discussions regarding settlement or proffer, is opposed to negotiating at this time, or whether he needs additional time to determine his position. In the event Respondent wishes to file a Rule 4(c) report, he may propose a date for filing it, but shall indicate his position on entering into negotiations regardless of whether he wishes to file a Rule 4(c) Report.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master