# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 23-940V

|  |  |
|---|---|
| VICKI MULLIN,<br><br>　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: February 17, 2026 |

*Jimmy A. Zgheib, Zgheib Sayad, P.C., White Plains, NY, for Petitioner.*

*Austin Joel Egan, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION AWARDING DAMAGES[1]

On June 23, 2023, Vicki Mullin filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered from a shoulder injury related to vaccine administration ("SIRVA") due to an influenza ("flu") vaccine administered on November 11, 2020. Petition at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters, and although Respondent ultimately conceded entitlement,[3] the parties could not informally resolve damages.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] In July 2024, I resolved the disputed issue of situs in Petitioner's favor. ECF No. 20. Respondent then did not contest entitlement on other grounds and agreed that Petitioner had satisfied the criteria set forth in the Vaccine Injury Table for a SIRVA caused by a flu vaccine. Respondent's Report at 2, ECF No. 25.

For the reasons set forth below, and after hearing argument from the parties, I find that Petitioner is entitled to compensation in the amount of **$195,000.00, for actual pain and suffering, and $3,539.54 in past unreimbursable expenses, for a total of $198,539.54.**

## I.    Relevant Procedural History

Respondent filed a Rule 4(c) Report in September 2024 conceding that Petitioner was entitled to compensation in this matter. ECF No. 25. I thus issued a Ruling on Entitlement on September 20, 2024. ECF No. 28. The parties thereafter attempted to informally resolve damages but were unsuccessful; they subsequently filed briefs setting forth their competing views. ECF Nos. 33-35. I proposed that the parties be given the opportunity to argue their positions at a "Motions Day" hearing, at which time I would decide the disputed damages issues. ECF No. 37. The parties agreed and the hearing was held on February 10, 2026 (following one scheduling delay due to weather conditions). ECF No. 38; Min. Entry, docketed Feb. 10, 2026. Shortly prior to the hearing in this matter, Respondent filed a notice of supplemental authority citing additional caselaw. ECF No. 39. During the hearing, I made an oral damages determination. This Decision memorializes those findings and determinations.

## II.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Special masters may consider prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in a specific case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may also rely on my own experience adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Hum. Servs.*, 109 Fed. Cl. 579 (2013).

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussions in Section II of *Matthews v. Sec'y of Health & Hum. Servs.*, No. 22-1396V, 2025 WL 2606607, at *2-3 (Fed. Cl. Spec. Mstr. Aug. 13, 2025).

### III.    Appropriate Compensation in this Matter

#### A.  Actual Pain and Suffering

In this case, awareness of the injury is not disputed. Petitioner was a competent adult with no impairments that would impact her consciousness of her injury. Therefore, I analyze principally the severity and duration of the injury. When performing this analysis, I review the record as a whole, including the medical records and affidavits filed, all assertions made by the parties in written documents, and the parties' arguments during the expedited damages hearing.[5]

The record shows that following her vaccination, Petitioner (age 57 when vaccinated) suffered a severe SIRVA causing her to report shoulder-related symptoms within one day of vaccination and seek treatment for approximately two years thereafter. Specifically, Petitioner first complained of shoulder pain the day after her receipt of the subject vaccination (with a call to her primary care provider ("PCP")) but then did not

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases were assigned to former Chief Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[5] I will note that the parties do not dispute many of the facts of Petitioner's post-vaccination injury course or the duration of her injury. *Compare* Br. at 2-7, *with* Resp. at 2-4.

receive *consistent treatment* specific to the right shoulder until June 2021 (over six months post vaccination). While I credit Petitioner's explanation that she returned to care in June 2021 once her pain did not resolve with home remedies (and she was not busy caring for her mother or concerned regarding contracting COVID-19, Ex. 3 ¶¶ 9, 13), the fact that she managed to cope with her pain without treatment during this time speaks to a somewhat moderate degree of severity of Petitioner's injury. Still, she thereafter followed up consistently without significant gaps in treatment until November 2022 – thus two years post vaccination.

Despite her initial "delay" in seeking medical care for her right shoulder symptoms, Petitioner's treatment for her SIRVA was fairly aggressive overall. Particularly relevant is her treatment with over-the-counter and prescription medications, one steroid injection, one MRI, an x-ray, 44 PT sessions (both pre- and post-operative rounds), and two surgeries (one arthroscopic and one open procedure), followed by an improvement in symptoms (with some lingering effects that do not require ongoing care – including a visual "bulge" in her bicep and other normal SIRVA sequalae such as pain, stiffness, and range of motion ("ROM") restrictions). Additionally, Petitioner described moderate to severe pain ranging in severity from 3-10/10 (with an improvement to 0-4/10 by September 2022, followed by an exacerbation of pain rated at a 7/10 the following month) for the duration of her somewhat lengthy treatment course. *See,* e.g., Ex. 7 at 43, 108, 214; Ex. 16 at 4 (reverse order).

These facts are consistent with a severe injury course. But despite the fact that Respondent did not *directly* contest Petitioner's second surgery (an open subpectoral biceps tenodesis procedure) as related to her original SIRVA, as discussed during the expedited damages hearing in this matter, I do not conclude on this record that the overall course of treatment Petitioner has required can *entirely* be attributed to her SIRVA.

The record shows that Petitioner received consistent right shoulder treatment for about one year; she underwent her first surgery in December 2021 (an arthroscopic labral and rotator cuff debridement, biceps tenodesis, and subacromial decompression, which temporarily gave her some relief in symptoms – e.g., Ex. 7 at 142; Ex. 8 at 25, 45); she received a substantial amount of treatment with PT, pre- and post-surgery; and she had a steroid injection when PT exacerbated her pain. Ex. 8 at 45. Her subclinical findings on MRI revealed those commonly seen in Program SIRVA cases (i.e., bursitis – Ex. 6 at 16). I will note, however, that her MRI also showed comorbid ailments including a partial thickness tear of the supraspinatus tendon that is known to not be vaccine-caused.[6]

---

[6] *See,* e.g., *Lang v. Sec'y of Health & Hum. Servs.,* No. 17-995V, 2020 WL 7873272, at *13 (Fed. Cl. Spec. Mstr. Dec. 11, 2020) (finding that evidence of the existence of a rotator cuff tear does not *per se* preclude a finding that a Table SIRVA exists, but the "key questions is whether [the] petitioner's own clinical history indicates that [his] shoulder pathology wholly explains [his] symptoms independent of vaccination."). *Lang* also described a Health and Human Services-Centers for Disease Control joint study which found that

More so, it appears that by May 2022, Petitioner began reporting a constellation of symptoms specific to her bicep (rather than shoulder), including "prominence," bruising, and bulging; she was assessed as having a biceps tear. Ex. 8 at 46-49. She thus underwent an open subpectoral biceps tenodesis *centered around those specific bicep symptoms only* in August of that year, and then continued to receive treatment for her concern regarding the "popeye look" to her bicep (characterized by her treater as a "visual difference") through November 2022. *See,* e.g., Ex. 7 at 211; Ex. 8 at 60, 73. It thus is not clear that Petitioner's ongoing bicep injury and visual deformity (and therefore her second surgery and affiliated treatment) is wholly related to her SIRVA. Still, because Respondent did not object to Petitioner's latter surgery as being related to the subject vaccine injury (e.g., Resp. at 8-11), I will therefore award more in past pain and suffering than I would have if I fully found the second procedure to be distinguishable.

In her briefings and during the damages hearing, Petitioner cites to a number of damages decisions involving SIRVAs, highlighting the similarities between the petitioners in those cases and Ms. Mullin. Br. at 9-10; Reply at 2-3.[7] Petitioner argues that an award of $205,000.00 is appropriate in this case. Br. at 9. Petitioner bases this request on her two surgeries, a steroid injection, narcotic medication, over 44 PT sessions, resulting in persistent pain, restricted motion, fear of reinjury, and a permanent deformity that "undermines her confidence and emotional well-being." *Id.* at 10. Petitioner also contends that her injury ended a "longstanding, meaningful career, robbing her of both personal fulfillment and professional identity." *Id.*

---

rotator cuff tears were present in approximately 40% of a cohort of compensated SIRVA cases. *See* 2020 WL 7873272, at *13; *see also Grossman v. Sec'y of Health & Hum. Servs.,* No. 18-13V, 2022 WL 779666, at *17 (Fed. Cl. Spec. Mstr. Feb. 15, 2022) (citing the Atanasoff article relied upon in creating the SIRVA QAI, for the proposition that "MRI findings . . . such as rotator cuff tears, may have been present prior to vaccination and became symptomatic as a result of vaccination-associated synovial inflammation"); *accord* 42 C.F.R. § 100.3(c) (describing SIRVA as "an inflammatory reaction" within the musculoskeletal system of the shoulder). *Peka v. Sec'y of Health & Hum. Servs.,* No. 20-1099V, 2025 WL 551367, at *6 (Fed. Cl. Spec. Mstr. Jan. 15, 2025) (finding that a petitioner's upcoming shoulder surgery to treat bursitis *and* an age-related rotator cuff tear was not consistent with an ongoing vaccine-related injury, as the rotator cuff injury was found to be generalized and pre-existing, and the vaccine injury was thus not the predominant factor at play at the time of his surgery).

[7] In particular, Petitioner cited to *Elmakky v. Sec'y of Health & Hum. Servs.,* No. 17-2032V, 2021 WL 6285619 (Fed. Cl. Spec. Mstr. Dec. 3, 2021) (awarding $205,000 for actual pain and suffering); *Lawson v. Sec'y of Health & Hum. Servs.,* No. 18-882V, 2021 WL 688560 (Fed. Cl. Spec. Mstr. Jan. 5, 2021) (awarding $205,000 for actual pain and suffering); *Mulloy v. Sec'y of Health & Hum. Servs.,* No. 19-1396V, 2023 WL 2620653 (Fed. Cl. Spec. Mstr. Mar. 24, 2023) (awarding $205,000 for actual pain and suffering); *Lavigne v. Sec'y of Health & Hum. Servs.,* No. 19-1298V, 2022 WL 2275853 (Fed. Cl. Spec. Mstr. May 12, 2022) (awarding $198,000 for actual pain and suffering); *Meirndorf v. Sec'y of Health & Hum. Servs.,* No. 19-1876V, 2022 WL 1055475 (Fed. Cl. Spec. Mstr. Mar. 7, 2022) (awarding $200,000 for actual pain and suffering); *McDorman v. Sec'y of Health & Hum. Servs.,* No. 19-814V, 2021 WL 5504698 (Fed. Cl. Spec. Mstr. Oct. 18, 2021) (awarding $200,000 for actual pain and suffering); and *M.W. v. Sec'y of Health & Hum. Servs.,* No. 18-267V, 2021 WL 3618177 (Fed. Cl. Spec. Mstr. Mar. 17, 2021) (awarding $195,000 for actual pain and suffering).

Respondent, on the other hand, originally proposed an award ranging from $111,000.00 - $135,000.00 for Petitioner's treatment that was significant and involved surgery and prompt reporting of pain. Resp. at 8. He thus compared the facts of Petitioner's circumstances favorably to a number of less severe SIRVA cases.[8] *See id.* Interestingly (and as noted above), on the eve of the expedited damages hearing in this case, Respondent submitted a notice of additional authority (*Angerosa v. Sec'y of Health & Hum. Servs.,* No. 22-1022V, 2025 WL 2304436 (Fed. Cl. Spec. Mstr. July 7, 2025)), which included a pain and suffering award of $165,000.00 – thus exceeding his previously proffered range of awards. *See* ECF No. 39. During the hearing, Respondent acquiesced that this case provided a much closer comparison to an appropriate award in the instant case.

The parties do not dispute that the overall record supports the conclusion that Petitioner suffered a severe SIRVA. Though Respondent's recently-provided comparable case of *Angerosa* provides the most useful comparison out of the cases he relied upon for support, the remainder of his cited cases involve awards much too low to apply to these circumstances. *Angerosa* included two surgical procedures (one arthroscopic surgery and a manipulation under anesthesia), severe pain ratings ranging from a 5-9/10, and 13 PT sessions, followed by a *fairly quick and full recovery* after an eleven-month treatment course. *See* 2025 WL 2304436. Petitioner's treatment course extended for approximately two years (albeit with a six-month "gap"), her treatment was more aggressive than the petitioner's in *Angerosa* (i.e., with a steroid injection and over 40 PT sessions), and she experienced lingering sequelae of her vaccine injury (rather than a documented full recovery). Thus, an award of $165,000.00 is not justified in this case.

I find the comparable damages determinations offered by Petitioner to be helpful in providing a reasonable range of outcomes pertaining to the instant case. Nonetheless, Petitioner's circumstances do not warrant an award quite as high as her requested sum or that was awarded in some of the cases she relies upon for support. Comparatively, while Petitioner here experienced a severe injury made worse by some long-lasting real-life implications of her injury - including terminating her role as an ASL choir director, the cases she relied upon wherein an award above $200,000.00 was awarded involved petitioners with more aggressive treatment over longer durations.

---

[8] Respondent cited to *Knasel v. Sec'y of Health & Hum. Servs.,* No. 20-1366V, 2023 WL 2547961 (Fed. Cl. Spec. Mstr. Mar. 17, 2023) (awarding $112,500 for actual pain and suffering); *Rodgers v. Sec'y of Health & Hum. Servs.,* No. 18-559V, 2021 WL 6773160 (Fed. Cl. Spec. Mstr. Dec. 29, 2021) (awarding $117,500 for actual pain and suffering); *Wilson-Blount v. Sec'y of Health & Hum. Servs.,* No. 21-1400V, 2023 WL 5528930 (Fed. Cl. Spec. Mstr. July 25, 2023) (awarding $120,000 for actual pain and suffering); *Nolen v. Sec'y of Health & Hum. Servs.,* No. 19-1953V, 2023 WL 2945868 (Fed. Cl. Spec. Mstr. Apr. 14, 2023) (awarding $125,000 for actual pain and suffering); *Blanco v. Sec'y of Health & Hum. Servs.,* No. 18-1361V, 2020 WL 4523473 (Fed. Cl. Spec. Mstr. July 6, 2020) (awarding $135,000.00 for actual pain and suffering); and *Mates v. Sec'y of Health & Hum. Servs.,* No. 20-1662V, 2024 WL 3425745 (Fed. Cl. Spec. Mstr. June 11, 2024) (awarding $135,000.00 for actual pain and suffering).

For instance, the petitioners in *Elmakky* and *Lawson* each underwent one additional surgery attributable to their vaccine injuries compared to Petitioner in this case. *See* No. 17-2032V, 2021 WL 6285619 (Fed. Cl. Spec. Mstr. Dec. 3, 2021); *see also* No. 18-882V, 2021 WL 688560 (Fed. Cl. Spec. Mstr. Jan. 5, 2021). In the remaining case in which Petitioner's requested sum was awarded (*Mulloy v. Sec'y of Health & Hum. Servs.*), the petitioner treated for over four years (thus double the length of Petitioner's treatment course here), had four steroid injections (compared to Petitioner's one), and underwent *more than 100* PT sessions, therefore more than double the amount received by Petitioner. *See* No. 19-1396V, 2023 WL 2620653 (Fed. Cl. Spec. Mstr. Mar. 24, 2023). Likewise, the petitioners in *Meirndorf* and *McDorman* received significantly more treatment, in that *Meirndorf* received three steroid injections, two joint injections, underwent 79 sessions of PT, plus five laser treatments and acupuncture. *See* No. 19-1876V, 2022 WL 1055475 (Fed. Cl. Spec. Mstr. Mar. 7, 2022). Similarly, *McDorman* had 10 steroid injections and attended over 50 PT sessions. *See* No. 19-814V, 2021 WL 5504698 (Fed. Cl. Spec. Mstr. Oct. 18, 2021).

While Petitioner here attended more PT than some petitioners with SIRVAs, it is thus not the most amount of therapy we have seen in the Program. Nonetheless, her submitted evidence supports a severe and fairly aggressive course – resulting in lingering sequelae typically seen in SIRVA cases (pain, stiffness, restricted mobility) and real-life implications affecting her personal and emotional well-being. Petitioner is thus entitled to a slightly lesser award than her requested award.

Thus, pursuant to my oral ruling on February 10, 2026 (which is fully adopted herein), **I find that $195,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**

### B. Future Pain and Suffering

I do not include any component of damages for future pain and suffering. Such an award is appropriate "only for cases where a strong showing is made that the claimant has suffered a *permanent* disability, or there are other extenuating circumstances that justify inclusion of a future component." *Accetta v. Sec'y of Health & Hum. Servs.*, No. 17-1731V, 2021 WL 1718202, at *5 (Fed. Cl. Spec. Mstr. Mar. 31, 2021). Special masters have previously declined to award a future pain and suffering award in the absence of substantial indicia of permanency. *See,* e.g., *Reed v. Sec'y of Health & Hum. Servs.,* No. 16-1670V, 2019 WL 1222925, at *17 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (noting there should be "adequate medical evidence demonstrating the likelihood that petitioner's [] injury, more likely than not, will extend well into the future and . . . indicating that [an] injury is permanent").

Although I credit Petitioner's assertions that she currently continues to experience self-consciousness as a result of the "visual deformity" in her bicep, as well as ongoing SIRVA sequelae, including pain, stiffness, and limited ROM (e.g., Ex. 19 ¶¶ 4-7), I do not find sufficient evidence in the record supports the conclusion that Petitioner's SIRVA is *permanent* such that a future component is justified. Otherwise, to obtain a future pain and suffering component, a claimant must provide preponderant evidence that her SIRVA treatment is ongoing, or that a treater has opined that the petitioner has symptoms that will never be resolved, or some specific permanent deficit. That is not the case here. Rather, Petitioner's orthopedist told her during her last visit on November 7, 2022, that her bicep was "intact" on ultrasound, but that she "may always have a visual difference in the bicep despite intact repair. She is not having any cramping of the bicep which is good." Ex. 8 at 73. Petitioner also ceased treatment relating to her shoulder in November 2022, and (as discussed above) her second surgery and affiliated biceps treatment was likely unrelated to her original SIRVA. Thus, the filed record lacks sufficient evidence of showing an indicium of permanency to warrant a future award.

Further, the fact that Petitioner had to conclude her role as an ASL choir director in December 2021 (characterized as a "passion career," Br. at 10) – thus causing her to suffer a loss of identity and personal "devastation" – is not in itself evidence of grounds for this component of damages. *See,* e.g., Ex. 19 ¶¶ 8-11. In fact, the contemporaneous medical records show that while Petitioner may have had to transition out of this role as a result of the long hours affecting her shoulder and difficulties performing with accuracy, she was still able to work in her desired field (as an ASL teacher) as soon as by January 2022. *See* Ex. 7 at 108. More so, Petitioner did not seek a lost wages component in her award of compensation – thus supporting the fact that this impact on her career as a result of her vaccine injury was not as significant as in some of the cases in which she relies upon for support of this award. *Compare Schoonover v. Sec'y of Health & Hum. Servs.,* No. 16-1324V, 2020 WL 5351341 (Fed. Cl. Spec. Mstr. Aug. 5, 2020) (awarding future pain and suffering to a petitioner who (in part) was limited in her ability to carry out her professional responsibilities and finding she could not pursue her dream job as a respiratory transport therapist as a result of her vaccine injury). Petitioner's transition out of a "passion career" is not equivalent to wholly ending a career in one's desired field of expertise. Petitioner is thus not entitled to an award of future pain and suffering (although I have considered these circumstances in calculating her actual pain and suffering award, since it evidences her current status).

## CONCLUSION

In light of all of the above, I award **Petitioner a lump sum payment of $198,539.54**, **(representing compensation for actual pain and suffering and past unreimbursable expenses) to be paid through an ACH deposit to Petitioner's**

**counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[9]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.